```
             IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division

UNITED STATES OF AMERICA,      )
                               )
        v.                     )
                               )          1:09cr431(JCC)
DONNA MARIE GEORGE,            )
                               )
        Defendant.             )
```

**M E M O R A N D U M   O P I N I O N**

**(STATEMENT OF REASONS)**

This matter is before the Court for sentencing.

### I. Background

On September 24, 2009, the Grand Jury returned a three count indictment against Defendant Donna Marie George ("Defendant" or "George") charging Defendant with the following: (1) Conspiracy to Distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I); Distribution of Oxycodone on or about March 19, 2009 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count II); and Distribution of Oxycodone on or about May 14, 2009 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count III).  [Dkt. 11.]  On January 27, 2010, a jury found Defendant guilty on all three counts.

The pre-sentence report ("PSR") prepared for Defendant places her as a Category I offender with a total offense level of 36, yielding a guidelines range of 188 to 235 months.  To reach this recommendation, the PSR first applies a base offense level

1

of 34 for the distribution of 43,578 dosage units of prescription narcotics which converts into 9,976 kilograms of marijuana.  The PSR then enhances Defendant's base offense level by two level based on Obstruction of Justice under U.S.S.G. § 3C1.1.

      The Government submits in its position paper that Defendant should also receive a two-level enhancement for her role as an "organizer, leader, manager, or supervisor" of a crime under U.S.S.G. § 3B1.1(c) in addition to a two-level enhancement for obstruction of justice as recommended by the PSR.  (Gov's Mem. 7-8.)  If the Court were to accept the Government's recommendation, Defendant's total offense level would be 38, with a criminal history category of I, which would yield a sentencing range of 235 to 293 months of incarceration.  The Government recommends a high sentence relative to the statutory maximum that is below the Guidelines range "because even the low end of this sentence would nearly exceed the maximum amount of prison time for these crimes" and would still be consistent with sentencing factors set forth in 18 U.S.C. § 3553(a)  (Gov.'s Mem. 10.)

      Defendant objects to the amount of dosage units used by the PSR to calculate the base offense level on the basis that (1) the amount used by the PSR is based on questionable testimony from unreliable witnesses and (2) the total amount does not take into account the amount that was for personal use based on Defendant's drug addiction.  (Def.'s Mem. 3-4.)  Second,

2

Defendant requests the Court to consider her acceptance of responsibility and award her a two level reduction at the conclusion of sentencing based on the evidence presented during her allocation. Third, Defendant requests a downward departure from the guidelines range to "bring a [D]efendant's sentence into line with" her co-conspirators or based on other reasons that the Court might find appropriate. (Def.'s Mem. 5-6.)

## II. Analysis

### A. Quantity of Drug: "Personal Use"

The PSR indicates that Defendant is accountable for the 20,792 pills obtained through the Sindelar scheme as well as the 22,786 pills obtained from a various doctors as indicated in the PMP Report, which yields a total of 43,578 pills (equivalent to 9,976 kilograms of marijuana). (PSR ¶¶ 39-40.) Defendant submits that the Court should not attribute this total amount to Defendant because the Government's witnesses were unreliable and that it does not exclude a personal use amount from the total. (Def.'s 2-4.)

The Court rejects Defendant's argument that the quantity of drug used by the PSR to calculate the base offense level is based on baseless, bold claims made by unreliable witnesses. Based on its opportunity to observe the direct and cross examination of the Government witnesses such as Lisa and John Sindelar, William Hart, Patrick Barber, Shonya Young, and

3

Matthew Scarlett, who testified extensively as to Defendant's involvement in the Sindelar conspiracy and doctor-shopping, the Court found their testimony to be largely consistent and credible as to the nature of the conspiracy, Defendant's involvement and effect she had in the conspiracy, and the amount of drug distributed by the members of the conspiracy. Also, the Court credits the testimony of Special Agent Andrew Lenhart and Dr. Abraham Asmamaw, who testified as to Defendant's involvement in doctor shopping for prescriptions.

Similarly, the Court rejects Defendant's argument that it should adjust the drug quantity used to determine the base offense level to account for the amount of drugs consumed by Defendant for personal use. Though not yet addressed in the Fourth Circuit, many other Circuit Courts of Appeals have addressed this issue concluded that "when a defendant is convicted of drug distribution, ordinarily a district court should exclude from the total drug quantity any amount possessed for his personal consumption." *Unites States v. Iglesias*, 535 F.3d 150, 160 (3rd Cir. 2008); *see also United States v. Innamorati*, 996 F.2d 456, 492 (1st Cir. 1993); *United States v. Snook*, 60 F.3d 394, 395 (7th Cir.1995); *United States v. Antonietti*, 86 F.3d 206 (11th Cir. 1996); *United States v. Asch*, 207 F.3d 1238, 1243-44 (10th Cir. 2000); *United States v. Williams*, 247 F.3d 353, 358 (2nd Cir. 2001); *United States v.*

*Fraser*, 243 F.3d 473, 475 (8th Cir. 2001); *United States v. Gill*, 348 F.3d 147, 153 (6th Cir. 2003). While Defendant's counsel tries to distinguish Defendant's case from a casual user case - and the Court is sympathetic that Defendant suffered from physical conditions that required strong pain medication which turned into a crippling addiction - the Court believes that such distinction does not make a difference when Defendant is a member of a drug conspiracy. While "[p]urchases by an addict or casual user for personal use may not automatically make one a member of a conspiracy to distribute," when the evidence establishes that there is a conspiracy in which Defendant is a member, then the "[D]efendant's purchases for personal use are relevant in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." *Innamorati*, 996 F.2d at 492. Thus, based on this rationale, the Court will not exclude from the drug quantity calculation the amount that Defendant used for her personal use.

### B. "Role in the Offense" Enhancement

Under U.S.S.G. § 3B1.1(c), a two level enhancement applies in sentencing if Defendant "was an organizer, leader, manager, or supervisor in any criminal activity" for a relatively small enterprises. U.S.S.G. § 3B1.1(c). The Government submits that Defendant should receive the two-level enhancement because she "played a leadership role" in the conspiracy. (Gov.'s Mem.

7-8.) The PSR does not recommend this enhancement and Defendant objects to the enhancement for her role in the offense.

Whether a defendant played a significant role in the offense is a factual question for the district court. *See e.g., United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002). The burden is on the Government to prove that Defendant had a leadership role by a preponderance of evidence. *United States v. Melton*, 970 F.2d 1328, 1334 (4th Cir. 1992). To determine the extent of a Defendant's role in the offense, the district court may consider: (1) whether the defendant exercised decision-making authority; (2) the nature of the defendant's participation; (3) whether the defendant recruited others; (4) whether the defendant claimed a larger share of the proceeds; (5) the defendant's degree of participation in planning or organizing the offense; (6) the nature and scope of the crime; and (7) the defendant's degree of control over others. See U.S.S.G. § 3B1.1 cmt. n. 4; *See also United States v. Wall*, 214 F. App'x 318, 319 (4th Cir. 2007).

After carefully reviewing the applicable factors in light of the facts of this case, despite the fact that she was a main street-level distributor for the Sindelar scheme, it appears that Defendant did not have a leadership and organizational role, did not have any decision making authority with respect to operation of the conspiracy, and was not an essential member for

the conspiracy to operate. *Cf. United States v. Milner*, 2008 WL 199730,*4-5 (E.D.N.C. 2008) (applying the two-level enhancement where a defendant exercised decision making authority and was extensive and essential to executing the conspiracy scheme). Though the evidence suggests that George recruited accomplices like Matthew Scarlett, it does not appear that she exercised any significant degree of control and authority over others in the scheme. Based on these reasons, the Court holds that Defendant did not have an "aggravating role" in the offense and declines to apply the two-level enhancement pursuant to U.S.S.G. § 3B1.1(c).

### C. Obstruction of Justice

Pursuant to U.S.S.G. § 3C1.1, a two-level sentencing enhancement is merited where:

> (A) the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense....

The PSR states that Defendant objects to the two-level enhancement for Obstruction of Justice, PSR at A-3, and Defendant's counsel presented Cindy Carter and Defendant's testimony at sentencing to support her position. Based on its careful review of the case and consideration of the evidence presented at sentencing, the Court finds that the two-level enhancement here is appropriate. At trial, Defendant's daughter,

Cindy Carter, testified that Defendant threatened her that she would expose her mental health problems and past sexual abuse if she were to testify for the Government. Although Ms. Carter now claims that her mother never threatened her to testify, it does not affect Court's analysis. The Court sees other ample evidence in the case to support its finding. For example, Defendant instructed her daughter to hide her car from the authorities and to forge her signature to withdraw $49,000 from her bank account and hide it in another account. Defendant also instructed a drug client to give a false account to the authorities, if asked, to cover up her own criminal activities. Lastly, on the day of Richard Sindelar's arrest, Defendant went by his house and took hundreds of dollars' worth of pills after Defendant learned of the FBI's plan to raid Mr. Sindelar's house. Though Defendant disputed these facts at sentencing, the Court credits the testimony of a number of witnesses it observed during the trial, and finds that Defendant's acts largely obstructed administration of justice. Thus, the Court finds the two level enhancement for obstructing the administration of justice pursuant to U.S.S.G. §3C1.1 in this case to be appropriate.

### D. Acceptance of Responsibility

Pursuant to U.S.S.G. § 3E1.1, defendant's offense level will be decreased by two levels if he 'clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1.

The application notes to § 3E1.1 clearly provides that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S.S.G. § 3E1.1, n.2. Though the Court acknowledges that a defendant convicted after trial is not automatically precluded from receiving a two level reduction for acceptance of responsibility, the Court believes that this case is not the rare types of cases contemplated by the U.S. Sentencing Commission for the exception (*e.g.*, Defendant goes to a trial to make a constitutional challenge to a statute). Defendant at sentencing denied that she was ever involved in a drug conspiracy with the Sindelars, and essentially argued that she did not commit the offense of which she was found guilty by a jury. Thus, the Court does not find that Defendant has truly admitted responsibility for the conduct for which she is accountable and holds that she is not entitled to the reduction under §3E1.1.

### E. Request for a Sentence Outside the Guidelines Range

Defendant also argues that, in the event that the Court accepts the calculations suggested by the PSR, the Court should depart downward from the applicable guidelines range based on the facts and circumstances of this case. (Def.'s Mem. 6.) Interestingly, the Government also asks for a sentence below the guidelines range because the lowest point of the calculated

guidelines range (235 months) almost would exceed the statutory maximum sentence for Defendant.

After *United States v. Booker*, 543 U.S. 220 (2005), imposing a sentence under the advisory guidelines is a multi-step process. First, the district court "must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). Next, the court must consider whether a sentence within that range "serves the factors set forth in [18 U.S.C.] § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors." *Id.* (internal quotations omitted). The factors to be considered include the nature and circumstances of the offense, the history and characteristics of the defendant, the sentencing range established by the Guidelines, any pertinent policy statements issued by the Sentencing Commission pursuant to its statutory authority, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a); *see also Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007).

In addition, § 3553(a) provides that a district court should impose a sentence that is "sufficient, but not greater than necessary," for the sentence to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just

10

punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed education or correctional treatment.  *Id.*

After a painstaking consideration of all the § 3553(a) factors, the Court finds that a sentence within the applicable guidelines range does not serve those factors and is greater than necessary to comply with the purposes set forth in § 3553(a)(2). Accordingly, the Court will grant a variance from the applicable guidelines range.  In coming to this conclusion, the Court considered numerous factors.

The Court believes that a variance is appropriate in light of the sentences received by her co-conspirators who have been sentenced for similar criminal conduct.  One of the co-conspirators in the crime, Richard Sindelar, was sentenced to 60 months in imprisonment.  Other co-conspirators in the crime, Lisa and John Sindelar received sentences of 60 and 20 months respectively.  The applicable guidelines range in this case is 188 to 235 months and even the lowest range for the sentence would yield a sentence much greater than her co-conspirators' sentences.  The Court recognizes that these co-conspirators have pleaded guilty at a very early stage of the prosecution and have been helpful to the Government's investigation and prosecution of the conspiracy.  Even in light of that fact, the Court believes

that the sentence within the Guidelines range would be too harsh for Defendant who have engaged in similar conduct as compared to the sentences received by other participants in the conspiracy. In addition, the Court notes that, prior to the instant offense, Defendant has not been convicted of a crime since 1998. In 1998, she was found guilty of "bad check" in the General District Court of Fairfax County, Virginia. The substantial lapse in time between the last conviction and the conviction in this case indicates to the Court that a sentence between 188 to 235 months would be much greater than necessary to protect the public from Defendant's future crimes. Her criminal history suggests that even the sentence below the guidelines range would afford adequate deterrence to possible future criminal conduct by Defendant.

Based on the foregoing reasons, the Court believes that a sentence of 148 months is "sufficient, but not greater than necessary" punishment for Defendant, as consistent with sentencing factors set forth in 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 570 (2007).

### III. Conclusion

To sum, the Court finds that the appropriate offense level is 36, which with a criminal history Category of I yields a range of 188 to 235 months. However, the Court concludes that a

sentence within the Guidelines range of 188 to 235 months would not properly serve the factors set forth in 18 U.S.C. § 3553(a). Accordingly, the Court will grant a variance from the applicable Guidelines range and finds that a sentence of 148 months properly serves the factors set forth in 18 U.S.C. § 3553(a) and is sufficient, but no greater than necessary, to achieve the purposes of § 3553(a)(2).  Finally, the Court notes that the Court's sentence regarding Defendant will not change from 148 months even if it were to apply the aggravating role enhancement and the acceptance of responsibility reduction, or to take away the obstruction of justice enhancement it applied.

April 26, 2010 /s/
Alexandria, Virginia James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE