IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | 1:09cr431(JCC) |
| DONNA MARIE GEORGE, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a motion by the Government for a preliminary order of forfeiture.

**I. Background**

On September 24, 2009, the Grand Jury returned a three count indictment ("Indictment") against Defendant Donna Marie George ("Defendant" or "George") with the following: (1) Conspiracy to Distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I); Distribution of Oxycodone on or about March 19, 2009 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count II); and Distribution of Oxycodone on or about May 14, 2009 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count III). [Dkt. 11.] The indictment also sought, pursuant to 21 U.S.C. § 853: (1) all that lot of or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, more particularly described as 1553 Smithfield Way, Fredericksburg, Virginia, and (2) all funds in various accounts with Wachovia Bank under Donna M. George's

1

name.[1]  On January 27, 2010, a jury found Defendant guilty on all three counts.  At that time, Defendant waived jury trial on the forfeiture phase.  The determination on forfeitures alleged in the Indictment is now before the Court.

## II. Analysis

Pursuant to 21 U.S.C. § 853(a), a district court may order the forfeiture of "(1) proceeds obtained as a result of the crime for which a defendant was convicted or (2) property used or intended to be used to commit or to facilitate the commission of the crime for which a defendant was convicted."  *United States v. Herder*, 594 F.3d 352, 363-364 (4th Cir. 2010); 21 U.S.C. § 853(a).  Further, "the forfeiture of tainted property obtained, directly or indirectly" is not "limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from those who acted in concert with [her] in furthering the criminal enterprise" as well.  *United States v. McHan,* 101 F.3d 1027, 1043 (4th Cir. 1996).

In order to make the forfeiture determination, the Court must determine if the Government has "established the requisite nexus between the property and the offense."  Fed. R. Crim. P. 32.2(b)(1).  As forfeiture constitutes an aspect of the sentence imposed and not a substantive element of an offense,

---

[1] The account numbers for the relevant bank accounts are as follows: 1010138293545, 1010190675240, 1010203321782, 1010143878612, 07392051124054 (certificate of deposit).

2

*Libretti v. United States*, 516 U.S. 29, 39 (1995), the Government must establish this nexus by a preponderance of the evidence. *United States v. Tanner*, 61 F.3d 231, 235 (4th Cir. 1995).

The proper standard for the requisite nexus between property and the offense and crime in the Fourth Circuit is the "substantial connection" standard. *Herder*, 594 F.3d at 364 (internal citations omitted). Under this standard, "the government must establish that there was a substantial connection between the property to be forfeited and the offense" if the Government's theory for forfeiture is that "the property was used to commit, or to facilitate the commission of, the offense of conviction." *Id.* A substantial connection is established if use of the property made "the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990) (internal quotes omitted). And even "[j]ust one use of the property may be enough, given that a single violation is sufficient . . ." *Id.*

Criminal forfeiture is "concerned not with how much an individual has but with how much he received in connection with the commission of the crime." *United States v. Epps*, 2009 WL 2713954,*1 (4th Cir. 2009) (citing *United States v. Vampire Nation*, 451 F.3d 189, 201 (3d Cir.2006)). Thus, "[w]hen the defendant has disposed of these assets [subject to forfeiture] or the government cannot locate these assets due to an act or

3

omission of the defendant, the court may order substitute property of the defendant forfeited." *United States v. Morgan*, 224 F.3d 339, 341 (4th Cir. 2000); 21 U.S.C. § 853(p).

**III. Findings of Fact and Conclusions of Law**

Based on the evidence presented at trial as well as the forfeiture hearing which took place on April 23, 2010, the Court makes the following findings of facts and conclusions of law.

1. Numerous witnesses such as Patrick Barber, Cindy Carter, Matthew Scarlett, John Sindelar, Lisa Sindelar and Shonya Young, testified that Defendant often used her home, located at 153 Smithfield Way in Fredericksburg, Virginia, to carry out a number of drug deals. At Defendant's home, Richard Sindelar created fraudulent prescriptions using a printer located inside Defendant's house. Thus, the Court finds that ample proof was produced that the property at issue was used by Defendant and her co-conspirators to distribute drugs in violation of 21 U.S.C. §§ 841 and 846. Thus there exists a substantial connection between her home and the offence for which she was convicted. Thus, the Defendant's home located at 153 Smithfield Way, Fredericksburg, Virginia, must be forfeited to the United States.

2. Based on Special Agent Andrew Lenhart's testimony and the Virginia Prescription Monitoring Program ("PMP") reports dating back to June 2006, the Court finds that Defendant is accountable for the 20,792 pills obtained through the Sindelar

4

scheme as well as the 22,786 pills obtained from a various doctors as indicated in the PMP Report, which yields a total of 43,578 pills (equivalent to 9,976 kilograms of marijuana). (PSR ¶¶ 39-40.) The Court found Agent Lenhart's testimony to be credible and his estimate to be conservative since the evidence at trial indicated that Defendant engaged in doctor shopping as early as 2005 even though the PMP report only dated back to June 2006.

3. The witness testimony from Patrick Barber, Cindy Carter, Matthew Scarlett, John Sindelar, Lisa Sindelar, and Shonya Young established that Defendant was a large-scale dealer who distributed hundreds and thousands dollars' worth of illegally obtained drugs for years beginning in or about 2005. For example, Barber testified that he has paid Defendant approximately $5,000 to $10,000 a month for illegal prescriptions for a number of months in 2007. Matthew Scarlett also testified that he, over two-year period, purchased thousands of pills from Defendant, paying $40 to $80 a pill. Lisa Sindelar and Matthew Scarlett's testimony also established that Defendant, several times a week, purchased a large number of pills that are worth thousands of dollars at a cheaper price than the wholesale price, then resold them for much more. Based on its opportunity to observe the direct and cross examination of the Government witnesses such as Lisa and John Sindelar, William Hart, Patrick

Barber, Shonya Young, Cindy Carter, and Matthew Scarlett, who testified as to Defendant's involvement in the Sindelar conspiracy, the Court found their testimony to be largely consistent and credible as to the amount of drug distributed by the members of the conspiracy specifically as to Defendant.

4. The Court accepts the Government's conservative method of arriving at the proposed estimate of proceeds based on Special Agent Andrew Lenhart's opinion. The Court also credits the trial testimony by Dr. Abraham Asmamaw which corroborated Agent Lenhart's testimony that Defendant illegally obtained prescriptions through doctor shopping and sold at least half of them every month. Thus, based on the number of the pills involved in the conspiracy and using the conservative cost estimate of each milligram of Oxycontin as fifty cents, the Court finds that Defendant received at least $246,175 worth of Oxycontin through doctor shopping; and she and the members of her conspiracy have obtained $260,550 worth of Oxycontin - a total of at least $506,725. The Court finds this is the total amount of illegal proceeds that Defendant obtained as a result of the violations of 21 U.S.C. §§ 841 and 846 and that the United States shall have a personal money judgment against Defendant for this amount.

5. Criminal forfeiture is not an *in rem* proceeding against guilty assets, but an *in personam* proceeding against the

defendant.  *Billman v. McKenny*, 915 F.2d 916, 920 (4th Cir. 1990).  Thus, the Government may satisfy its monetary judgment through the seizure of property traceable to the offense.  18 U.S.C. § 982(a)(2).  If the property traceable to the offense is insufficient, the Government may look to the defendant's other assets to satisfy the judgment.  21 U.S.C. § 853(p) (incorporated by 18 U.S.C. § 982(8)(b)(1).  These substitute assets may be seized if the property subject to forfeiture cannot be located upon the exercise of due diligence.  21 U.S.C. § 853(p)(1)(A).  The forfeiture of substitute assets is not discretionary with the trial court.  See 21 U.S.C. § 853(p)(2)("the court shall order the forfeiture of any other property of the defendant up to the value of any property [that is forfeitable, but cannot be located]").  In *Billman*, the Fourth Circuit held that the Government is not required to trace the proceeds of an offense to satisfy a money judgment.  915 F.2d at 920 ("A forfeiture money judgment can be satisfied out of any of the defendant's assets.")  Thus, the Court finds that the United States is allowed to forfeit all monies from the Defendant's existing bank account in partial satisfaction of the $506,725.  The Court further finds that forfeiture of Defendant's monthly annuity payments in the amount of $1,081 per month, for next ten years, totaling approximately $129,720.00, as substitute assets is appropriate.

**IV. Conclusion**

7

For the foregoing reasons, this Court will enter a preliminary order of forfeiture specifying Defendant's real property as well as all monies in the bank account as well as her future annuity payments to be forfeited to the government.

An appropriate Order will issue.

April 26, 2010  
Alexandria, Virginia

/s/  
James C. Cacheris  
UNITED STATES DISTRICT COURT JUDGE