IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | 1:09cr431 (JCC) |
| DONNA MARIE GEORGE, ) | |
| ) | |
| Defendant. ) | |

## **A M E N D E D   M E M O R A N D U M   O P I N I O N**[1]

This matter is before the Court on Defendant Donna Marie George's February 11, 2010 second Motion for a New Trial ("Motion II"). [Dkt. 82.] The United States filed an Opposition on February 22, 2010. [Dkt. 84.] Defendant did not file a Reply. For the following reasons, the Court will deny Defendant's second Motion for a New Trial.

### I. Background

On September 24, 2009, a three count indictment was returned against Donna Marie George ("Defendant" or "George") charging: (Count I) Conspiracy to Distribute Oxycodone; (Count II) Distribution of Oxycodone; and, (Count III) Distribution of Oxycodone. [Dkt. 11.] During the course of pre-trial discovery, the United States ("US" or "Government") provided

---

[1] This Amended Memorandum Opinion supersedes this Court's Memorandum Opinion of May 12, 2010. [Dkt. 100.] That Memorandum Opinion shall carry no effect.

1

open file discovery to the defense and allowed defense counsel to repeatedly interview FBI Special Agent Andrew Lenhart who was in charge of the George investigation. (Defendant's February 11, 2010 Motion for a New Trial ("Mot. II") at 1; Gov't Opposition to Mot. II ("Opp. II") at 2.) Following the submission of proposed witness lists and jury instructions by both parties, trial commenced on January 25, 2010. [*See* Dkt. 64.] At trial, the Government offered the testimony of eleven witnesses, including Special Agent Lenhart, co-conspirator Lisa Sindelar, Dr. Abraham Asmamaw (a doctor from whom Defendant sought Oxycodone), Lenna Pitts (a witness to drug distribution activity), Patrick Barber and William Hart (both of whom personally purchased illegal narcotics from Defendant on a regular basis). After a two day trial the jury found Defendant guilty on all counts. [Dkt. 77.]

On February 4, 2010, one week after the guilty verdict, the Government informed defense counsel that it had failed to provide Defendant with copies of five documents that were retained in a separate file than the one provided to defense counsel. (Mot. II at 1-2; Opp. II at 1-2.) These five documents are: (1) notes taken on February 2, 2007, by Fauquier County Sheriff's Office Lieutenant Cuno Andersen ("Lt. Andersen") during an investigative interview of co-conspirator

and Government witness Lisa Sindelar; (2) notes taken on September 3, 2007, by Lt. Andersen during an investigative interview of co-conspirator Richard Sindelar, who was not called as a trial witness; (3) a review of the evidence in the case against Richard, John, and Lisa Sindelar, authored by Special Agent Lenhart; (4) a Henrico County Police report of certain criminal activity of co-conspirator Richard Sindelar; and (5) a FBI-302 interview report by Special Agent Lenhart from an interview of Todd Sindelar, who is a brother to co-conspirators Richard and John Sindelar and who also did not testify at trial. (Mot. II at 2; Opp. II at 2.) Defendant's second Motion for a New Trial is based on the Government's alleged failure to provide discovery materials to the Defendant prior to trial in violation of Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jenks Act, 18 U.S.C. § 3500.[2]

## II. Standard of Review

A motion for a new trial on grounds of newly-discovered evidence is granted only if (1) the evidence is, in fact, newly discovered; (2) facts are alleged which allow an

---

[2] *See United States v. Borokinni,* 748 F.2d 236, 237 (4th Cir. 1984) (rejecting defendant's claim that his indictment should have been dismissed because the government failed to produce exculpatory material at his first trial because, even "assuming [defendant] was entitled to the materials at his first trial, his remedy for the government's failure to furnish them was a new trial, not an acquittal").

3

inference of diligence on defendant's part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence would probably produce an acquittal at a new trial. *United States v. Bates*, 813 F.2d 1289, 1295 (4th Cir. 1987). There is an exception to these requirements for evidence undiscovered because of a *Brady* violation. *See United States v. Cohn*, 166 F. App'x 4, 7 (4th Cir. 2006). In such a case, the Defendant would need to demonstrate that the withheld evidence was in fact *Brady/Giglio* material in which case a new trial may be warranted even if the evidence is merely impeaching and, if presented at a new trial, would create a "*reasonable probability* of a different result." *Id.* (emphasis added) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), *United States v. Bagley*, 473 U.S. 667, 676 (1985)). In the case of statements of government witnesses discoverable under the Jencks Act, "in the absence of bad faith or prejudice, the failure to disclose Jencks Act material will not result in reversal." *United States v. Stalvey*, 966 F.2d 1446, 1992 WL 122288 *2 (4th Cir. 1992) (*per curiaum*) (citing *Arizona v. Youngblood,* 488 U.S. 51 (1988) (finding unless a defendant can show bad faith on behalf of the government, failure to preserve evidence does not result in the denial of due process.))

### III. Analysis

Defendant's second Motion for a New Trial is based on the Government's alleged failure to provide discovery materials to the Defendant prior to trial in violation of Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jenks Act, 18 U.S.C. § 3500. Defendant must show that: (1) the withheld evidence was in fact illegally suppressed under *Brady/Giglio*; and (2) the evidence, if presented at a new trial, would create a "reasonable probability of a different result." *Cohn*, 166 F. App'x. at 8 (citations omitted). In the case of statements of government witnesses discoverable under the Jencks Act, a Defendant must demonstrate bad faith or prejudice on the part of the Government in order for the failure to disclose Jencks Act material to result in reversal. *Stalvey*, 1992 WL 122288 *2 (citations omitted).

Defendant does not submit the documents in question for the Court's review. Defendant also does not offer any argument as to *why* the five non-disclosed documents should be considered *Brady, Giglio*, or Jenks material other than to say "the materials above are clearly covered by these discovery provisions." (Mot. II at 2.) Despite this, the Court obtained copies of the documents in question from the Government and has

reviewed them in full.  The Court will first address whether the five undisclosed documents warrant a new trial under the *Brady/Giglio* standard and then turn to the application of the Jencks Act.

    1.   *Brady* and *Giglio*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87.  In order to prevail on a *Brady* claim, however, it is not enough simply to say that favorable evidence was withheld.  *Id.*  The burden is on the Defendant to prove (1) that the "evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) that the "evidence [was] suppressed by the [government], either willfully or inadvertently;" and (3) that the evidence was material to the defense, *i.e.,* "prejudice must have ensued." *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010) (citing *Strickler v. Greene,* 527 U.S. 263, 281-82, (1999)); *see also Giglio v. United States,* 405 U.S. 150, 154-55 (1972) (including impeachment evidence within the scope of materials that *Brady* requires prosecutors to disclose).

As Defendant fails to offer any argument as to why *Brady* would apply to the documents in question, it is difficult for the Court to evaluate her challenge. Nevertheless, the Court, having received a copy of the five documents from the Government, reviews them as follows.

The first document, what the Court will refer to as Exhibit One, consists of notes of an interview between Lt. Andersen and Lisa Sindelar, a government witness at trial. In the document Lisa Sindelar gives an account of her efforts to obtain oxycodone through false or forged prescriptions that does not mention the involvement of the Defendant. As an initial matter, this document was turned over to Defendant's prior defense counsel during an October 20, 2009 meeting with Special Agent Lenhart and Special Assistant United States Attorney Joshua Rogers. Despite the fact that the existence of the document was not relayed by Defendant's original counsel to Defendant's trial counsel, this Court finds Exhibit One was not "suppressed" for purposes of a *Brady* motion.

Even assuming that Exhibit One was "suppressed," its suppression is still not sufficient to warrant a new trial. While Lisa Sindelar's statements to Lt. Andersen were at least "favorable to the accused" as they were arguably inconsistent with her trial testimony, for Exhibit One to qualify as *Brady*

7

material it must also be found to be "material." The Supreme Court has explained that evidence is "material" when "its suppression undermines confidence in the outcome of the trial," such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Kelly*, 35 F.3d 929, 936 (4th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Here, defense counsel cross-examined and impeached Lisa Sindelar regarding her conflicting stories about the involvement of the Defendant, in fact, elicited testimony from Lisa Sindelar admitting that she has left the Defendant out of her initial version of events. In addition, the Government presented ten other witnesses who testified in detail as to Defendant's culpability. Even without the testimony of Lisa Sindelar, the case against the Defendant was strong. Furthermore, Defendant offers no argument as to why there would be a "reasonable probability" that the disclosure of Exhibit One would have resulted in a different outcome at trial. This Court finds that there is not a "reasonable probability" that the outcome of the trial would have been different had a hard copy of Exhibit One been provided to the Defendant.

The second document, what the Court will refer to as Exhibit Two, consists of notes of an interview between Lt.

Andersen and Richard Sindelar, who is Lisa Sindelar's husband and *not* a government witness at trial. Again, Defendant's original trial counsel reviewed this document on October 20, 2009, however, did not retain a hard copy. (Opp. II at 7.) As it was disclosed to defense counsel, this Court does not consider the document to have been "suppressed" for purposes of *Brady*.

Even assuming that the document was "suppressed," its suppression is not grounds for a new trial. The contents of the document are similar to those of Exhibit One: it is a statement made to investigators regarding Richard Sindelar's attempts to fraudulently obtain illegal narcotics that makes no mention of the Defendant. The Government chose not to call Richard Sindelar as a witness upon its discovery that he had attempted to convince his wife to lie to investigators. (Opp. II at 7.) This information was disclosed to defense counsel and the Government offered to do a "come-up" so that Richard Sindelar could be called as a defense witness. (Opp. II at 7.) The Defendant declined. Again, the Government presented eleven witnesses who testified in detail as to Defendant's culpability. Defendant had the opportunity to call Richard Sindelar but chose not do so. Defendant offers no argument why the suppression of this document would be "material." This Court finds that even

if this document were "suppressed," it was not "material" thus it cannot form the basis of a *Brady* challenge.

The third document, what the Court will refer to as Exhibit Three, consists of a review of the evidence against George, authored by Special Agent Lenhart, a government witness. These notes are not *Brady/Giglio* material as they do not contain information that is favorable to the Defendant nor do they include information that could be used as impeachment evidence for any witness for the United States. Additionally, disclosure of them to Defendant would not have led to a "reasonable probability" that the outcome of the trial would have been different.

The fourth and fifth documents (Exhibits Four and Five), consist of a Henrico County Police Department police report on Richard Sindelar and a FBI-302 interview form of Todd Sindelar, Richard Sindelar's brother, completed by Special Agent Lenhart. Defendant does not offer any argument as to why these documents would be favorable to Defendant nor does she offer any argument as to how they might be used as impeachment evidence. This Court finds that neither of these documents contains information that is favorable to the Defendant nor do they include impeachment evidence of any witness for the United States, and, in any event, disclosure of them to Defendant would

not have led to a "reasonable probability" that the outcome of the trial would have been different.

    2.   *Jencks Act*

ADefendant must demonstrate bad faith or prejudice on the part of the Government, for the failure to disclose statements of government witnesses, Jencks Act material, to result in reversal. *See Stalvey*, 1992 WL 122288, *2 (citations omitted). A "statement" is defined as "a written statement made by [a government] witness and signed or otherwise adopted or approved by him . . . ." 18 U.S.C. § 3500.

There are three documents that arguably qualify as statements here: Exhibit One (interview notes of Lisa Sindelar); Exhibit Three (Special Agent Lenhart's investigation notes); Exhibit Five (Special Agent Lenhart's FBI-302 Form of Todd Sindelar's interview). Exhibit One does not qualify as a "statement" as it was written by Lt. Andersen who was not a government witness and was not "adopted or approved" by Lisa Sindelar. As to Exhibit Three, while arguably a statement under Jencks, there is no evidence of bad faith on the part of the Government for failing to disclose it, nor is there any reason to conclude that the Defendant suffered any prejudice as a result. The notes appear to simply be an outdated summary of the Special Agent Lenhart's early progress in his investigation

and contain no information that is potentially exculpatory or useful in impeaching him.  Without some evidence of prejudice and bad faith failure to disclose this cannot warrant a new trial.  Here the Defendant offers none.  Finally, Exhibit Five is a written statement of Special Agent Lenhart summarizing his interview with Todd Sindelar brother of Richard Sindelar and not a subject of the investigation.  While the report briefly mentions the Sindelars, it contains no information that is potentially exculpatory or useful in impeaching Special Agent Lenhart.  Again, Defendant does not offer, and this Court is not aware of, any evidence of bad faith on the part of the Government in failing to disclose Exhibit Five, nor is there any reason to conclude that the Defendant suffered any prejudice as a result.

## IV. Conclusion

For the foregoing reasons the Court will deny Defendant's second Motion for a New Trial.  An appropriate Order will issue.

May 13, 2010  
Alexandria, Virginia

/s/  
James C. Cacheris  
UNITED STATES DISTRICT COURT JUDGE