```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division

DONNA MARIE GEORGE,            )
                               )
     Petitioner,               )
                               )
        v.                     )
                               ) 1:09cr431 (JCC)
                               ) 1:13cv160
UNITED STATES OF AMERICA,      )
                               )
     Respondent.               )
```

## **M E M O R A N D U M  O P I N I O N**

This matter is before the Court on Petitioner Donna Marie George's ("George" or "Petitioner") Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (the "Motion"). [Dkt. 141.] Petitioner's Motion also requests the Court to appoint counsel in this matter. [Dkt. 141.] For the following reasons, the Court will deny Petitioner's Motion.

### I.   Background

A.   Factual Background

On September 24, 2009, Petitioner was charged by a federal grand jury in the Eastern District of Virginia, Alexandria division, in a three-count indictment with (1) Conspiracy to Distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) Distribution of Oxycodone on or about March 19, 2009 in violation of 21 U.S.C. §§ 841(a)(1) and

1

(b)(1)(C); and (3) Distribution of Oxycodone on or about May 14, 2009 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On August 28, 2009, the Court appointed CJA counsel Peter Linn Goldman ("Goldman") to represent Petitioner. [Dkt. 7.] On November 2, 2009, the Court granted Goldman's Motion to Withdraw as Attorney and appointed Charles Burnham to represent Defendant. [Dkts. 30-31.] On January 27, 2010, a jury found Petitioner guilty on all three counts. On April 23, 2010, the Court denied Petitioner's Motion for Acquittal, [Dkt. 81], and Motion for New Trial, [Dkt. 82]. After denying Petitioner's motions, the Court held a sentencing hearing. The Court imposed a term of imprisonment of 148 months as to each count, to be served concurrently, and three years supervised release as to each count to be served concurrently. [Dkt. 90.] On May 23, 2010, the Court denied Petitioner's Second Motion for New Trial. [Dkt. 105.]

On May 3, 2010, Petitioner timely filed a notice of appeal of the judgment and conviction to the United States Court of Appeals for the Fourth Circuit. [Dkt. 95.] Petitioner raised two arguments on appeal: (1) that she was entitled to a new trial because the Government had breached its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) that the Court erred in its imposition of a sentence. On

2

February 21, 2012, the Fourth Circuit affirmed Petitioner's convictions and sentence.  [Dkts. 129-30.]

### B. Procedural Background

On February 5, 2013, Petitioner timely filed this action to vacate her sentence.  Petitioner's Motion also requests that the Court appoint counsel in this matter.  [Dkt. 142.]  On February 12, 2013, the Court ordered the Government to file an answer to the petition within twenty-three days.  [Dkt. 144.]  On March 7, 2013, the Government filed a brief in response, [Dkt. 145], and on April 10, 2013, Petitioner filed a brief in reply, [Dkt. 146].

Petitioner's Motion is now before the Court.

## II. Standard of Review

Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  *See Hill v. United States*, 368 U.S. 424, 426–27 (1962).  To prevail on a § 2255 Motion, the petitioner bears the burden of proof by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### III. Analysis

Before the Court are two motions by Petitioner: the § 2255 Motion and the Motion to Appoint Counsel.

A. <u>§ 2255 Motion</u>

Petitioner raises three arguments in her § 2255 Motion: (1) that the prosecution failed to provide material exculpatory documents in violation of *Brady*; (2) that both her original attorney and her trial attorney provided ineffective assistance of counsel; (3) that the Prosecutor implied that Petitioner's decision not to testify was an admission of guilt, stated that defense witnesses were "shady characters" and attested to the truthfulness of Government witnesses. The Court will address each claim in turn. (§ 2255 Petition "Pet." at 5.)

1. <u>*Brady* Violation</u>

Petitioner argues that the prosecution did not fulfill its obligations under *Brady* by failing to provide material exculpatory documents to her attorney.[1] This Court and the Fourth Circuit have heard and decided this claim on the merits. Once an issue has been fully considered and decided by the court of appeals, the defendant cannot relitigate the issue before

---

[1] Petitioner also argues in her recitation of supporting facts for the *Brady* violation that "prosecution also forced a defense witness to leave the courthouse so she could not testify on by behalf." (Pet at 5.) This claim was not raised in direct appeal and Petitioner has not demonstrated "cause and "actual prejudice" as to this claim nor actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Accordingly, the Court will not consider Petitioner's *Brady* claim to the extent that it was not raised on direct appeal.

4

this Court under § 2255. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) ("[Petitioner] will not be allowed to recast, under the guise of collateral attack, questions fully considered by this court. . . ."); *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004)("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues."). Here, Petitioner is barred from relitigating her *Brady* claim because it was already decided on direct appeal. *See United States v. George*, 466 F. App'x 304, 306-09 (4th Cir. 2012). Indeed, George notes in her petition "Brady violations were brought up on direct appeal." (§ 2255 Petition "Pet." at 6.) Accordingly, this claim fails.

### 2. Ineffective Assistance of Counsel

Petitioner argues that her sentence is otherwise subject to collateral attack because her counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Although Petitioner did not raise an ineffective assistance of counsel claim on appeal, such claims may be the subject of a proper § 2255 petition despite a failure to seek direct review. *See United States v. DeFusco*, 949 F.2d 114, 120-21 (4th Cir. 1991).

Under *Strickland*, counsel's representation is ineffective where it falls "below an objective standard of

5

reasonableness," creating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," *id*. at 690 (defining ineffective assistance of counsel as falling below an objective standard of reasonableness and applying a strong presumption of competence and deference to attorney judgment); and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "The petitioner must show both deficient performance and prejudice; the two are separate and distinct elements of an ineffective assistance claim." *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994).

With respect to the first prong of the *Strickland* test, the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. The Supreme Court has elaborated on the deference due to counsel's performance, explaining that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

6

> hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* (quotation marks and internal citations omitted). With respect to the second prong, the prejudice prong, "a reasonable probability [of prejudice] is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Under both prongs, this Court evaluates "the reasonableness of counsel's performance . . . from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." *Hooper*, 845 F.2d at 476 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

### i. Peter Goldman

Petitioner claims that her first attorney, Peter Goldman, provided ineffective assistance because he failed to give her sufficient time to consider the Government's plea deal. Petitioner argues that Goldman was in possession of a plea deal for a week before he presented it to Petitioner. Petitioner further argues that when she was presented with the plea deal she had only hours to accept it. (Pet. at 5.)

"[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, –– U.S. ––, 132 S. Ct. 1399, 1408 (2012)). The Court in *Frye* noted, "standards for prompt communication and consultation recommended by the American Bar Association recommended by the American Bar Association . . . serve as important guides." *Id.* at 1409. The Court declines to decide whether a one-week delay in presenting a plea offer is deficient performance under *Strickland* because it finds that Petitioner has presented no evidence that she was prejudiced by this alleged deficiency.

Petitioner has not submitted an affidavit in support of her claims, nor any other evidentiary support. Even construing the petition and reply in the light most favorable to Petitioner, her claim fails to establish that she was prejudiced by Goldman's representation. To show prejudice in a case concerning a plea offer, "petitioners must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they had been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution cancelling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.'" *Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013) (quoting *Frye*, 132 S. Ct. at

8

1405). Additionally, "after the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Berry v. United States*, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (citations omitted).

Petitioner has presented no evidence that she would have accepted the plea deal had she been allowed more time to consider it. While Petitioner states in her reply that she would have entered into the plea agreement "had it been presented for her signature," this assertion is contradicted by her own petition. (Reply at 2.) In her petition, George states that her attorney "had a plea agreement for a week, without presenting it to me. When he did, I had only hours to accept it." (Pet. at 5.)

Moreover, as in *Berry*, there is nothing "in the record to suggest that Petitioner ever intended to plead guilty to the offenses with which [she] was charged." *Berry,* 884 F. Supp. 2d at 463. Goldman withdrew as counsel on November 2, 2009, [Dkt. 30], and Petitioner did not proceed to trial until nearly three months later, on January 25, 2010. [Dkt. 72.] Indeed, during Petitioner's sentencing before this Court she continued to deny her involvement in the conspiracy for which a jury found her guilty. (*See* Tr. 53:22-24; 56:9-12, Apr. 23, 2010.) Accordingly, the Court finds that Petitioner has not satisfied

her burden of proof under the "prejudice" prong; Petitioner is thus not entitled to relief on this claim.

### ii. Charles Burnham

Petitioner also raises several challenges to the trial strategy of her second attorney, Charles Burnham ("Burnham"). Petitioner claims that Burnham failed to "obtain the gate access code which would have impeached witnesses," failed to object to "irrelevant questioning" of Petitioner's daughter, did not "use letters written by jailed co-defendants concerning fabricating charges against [her]," and did not obtain witness statements from these jailed co-defendants.  (Pet. at 5.)

First, Petitioner's ineffective assistance claim as to Burnham's alleged failure to obtain certain witness statements is unavailing.  Petitioner has not demonstrated that she was prejudiced by this alleged inaction.  Under the second prong of *Strickland*, Petitioner must demonstrate a probability of prejudice "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Here, Petitioner has not stated the identity of these witnesses, what these statements would have revealed or how the introduction of these statements would have altered the outcome of her trial.  Because Petitioner has not made a requisite showing on prejudice, the Court need not consider whether Burnham's performance was deficient in this regard.

Second, Petitioner's allegations that Burnham failed to object to certain questions do not rise to the level deficient performance under *Strickland*. Looking to counsel's performance at trial, the Court notes that Burnham did raise a number of objections during the Government's questioning of Petitioner's daughter. (*See* Tr. 260:1-2, Jan. 26, 2010, "Your Honor, I'm going to object to relevance at this point.".) Furthermore, "[c]onstitutionally effective assistance does not require the assertion of every possible valid objection." *Moore v. United States*, 934 F. Supp. 724, 727 (E.D. Va. 1996). "Indeed, all experienced practitioners recognize that not infrequently it is better to remain silent than draw attention to a matter by offering an objection." *Id.*

Although Petitioner is now unsatisfied with this strategic decision not to further challenge the Government's questioning of Petitioner's daughter, the record demonstrates that counsel's choice was reasonable. *Strickland,* 466 U.S. at 690 ("[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir. 1977) (finding that courts are reluctant to second guess counsel's strategic choices); *Goins v. Angelone*, 52 F. Supp. 2d 638, 663 (E.D. Va. 1999) ("The *Strickland* standard mandates considerable deference to trial counsel's strategic

11

choices, whether or not those choices are ultimately successful."). Moreover, Petitioner fails to demonstrate prejudice as to this claim as well. Petitioner does not explain which statements elicited from her daughter were "irrelevant," nor does she state how these irrelevant statements were prejudicial. Accordingly, Petitioner's ineffective assistance claim as to Burnham's failure to object fails.

Finally, Petitioner fails to establish prejudice under *Strickland* as to her claims that Burnham did not obtain certain "gate access codes" or use letters by jailed co-defendants. Petitioner states that her attorney did not "use letters written by jailed co-defendants concerning fabricating charges against me in order to reduce their own sentences." (Pet. at 5.) Petitioner fails to explain how counsel should have used these allegedly fabricated documents as exculpatory evidence. Moreover, the record reflects that counsel engaged in extensive cross-examination of Lisa Sindelar and John Sindelar, two of Petitioner's co-conspirators who testified against her, regarding the circumstances surrounding their cooperation. (*See* Tr. 77:24-25, 78:1-11, Jan. 25, 2010; Tr. 106:14-108:22, Jan. 25, 2010.) The Court finds that Petitioner has not made a requisite showing that the additional use of such letters would have altered the outcome of her trial.

Likewise, Petitioner cannot show prejudice regarding her allegations that counsel did not obtain the "gate access code" in order to impeach witnesses. (Reply at 2.) Petitioner fails to state what "records" exist concerning the gate access code or to give any details regarding how these records would have impeached witnesses. Petitioner also does not specify which witnesses would have been impeached. Accordingly, the Court finds that Petitioner failed to meet her burden of showing that the outcome of the proceeding would have been different had counsel obtained this evidence.

3.   Privilege Against Self-Incrimination

Petitioner argues that the prosecution infringed upon her privilege against self-incrimination by implying that Petitioner's decision not to testify was an admission of guilt. Petitioner also argues that the prosecution impermissibly attested to the truthfulness of government witnesses and called defense witnesses "shady characters." (Pet. at 5.) Petitioner did not raise these claims before the Court in either of her motions for new trial or on appeal. "'Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.''" *United States v. Sanders*, 247 F.3d 139, 144 (4th Cir. 2001) (*quoting Bousley v. United States*,

523 U.S. 614, 622 (1998) (citations omitted)). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). "[T]o demonstrate that a miscarriage of justice would result from refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *Id.*

Petitioner's claims that her conviction was obtained in violation of her privilege against self-incrimination should have been raised on direct appeal.[2] Petitioner has not made any showing of "cause and actual prejudice" or actual innocence. *Bousley*, 523, U.S. at 630.  Therefore, Petitioner has procedurally defaulted on this claim.

For the reasons set forth above, the Court will deny Petitioner's § 2255 Motion.

B.  Motion to Appoint Counsel

There is no Sixth Amendment right to counsel to pursue a writ of habeas corpus. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987) ("[S]ince a defendant has no federal constitutional right to counsel when pursuing a discretionary

---

[2] Moreover, a review of the trial transcript makes plain that this claim is without merit.  The Prosecution made no statements regarding Petitioner's decision not to testify.

14

appeal on direct review of his conviction, . . . he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process."). A court may provide counsel for an indigent inmate pursuing a petition for a writ of habeas corpus when "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(2)(B). The Fourth Circuit, however, has limited the appointment to cases where "exceptional circumstances" exist, such as when a case is particularly complex or a litigant is unable to represent himself adequately. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296 (1989); *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 722–23 (E.D. Va. 2008). Petitioner has made no showing of "exceptional circumstances." Moreover, because Petitioner's petition will be dismissed, it is unnecessary to appoint counsel for her, and her Motion for Appointment of Counsel will be denied as moot.

### IV. Conclusion

For the foregoing reasons, the Court will deny Petitioner's Motions.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| October 30, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |